# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| RICHARD LAWRENCE, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>JIM MOORE, )<br>)<br>Respondent. ) | Case No. 05-3396-CV-S-GAF-P |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS

Petitioner, Richard Lawrence, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on August 23, 2005, seeking to challenge his 1999 convictions and sentences for driving while intoxicated and driving with a revoked operator's license, which were entered in the Circuit Court of Laclede County, Missouri.

Petitioner raises six grounds for relief: (1) ineffective assistance of trial counsel for failing to move for a change of venue; (2) ineffective assistance of trial counsel for not allowing petitioner to testify on his own behalf; (3) trial court error in denying petitioner's challenge for cause of two jurors; (4) trial court error in denying petitioner's motion for a new trial after petitioner discovered that he was related to one of the jurors; (5) trial court error in not allowing the testimony of petitioner's sister concerning the juror who is related to petitioner; and (6) trial court error in allowing witness, David Hudson's, in-court and out-of-court identifications of petitioner.

Respondent concedes exhaustion of petitioner's grounds for relief. However, respondent contends that Grounds 1, 2, 4, 5, 6 are without merit and that Ground 3 is procedurally defaulted.

## CONVICTION AND SENTENCE FOR DRIVING WHILE REVOKED

Respondent contends that petitioner is no longer "in custody" for his conviction and one-year sentence for driving while revoked. Petitioner does not address this issue in his reply. (See Doc. No. 20).

Pursuant to 28 U.S.C. § 2254(a), "the Supreme Court, a Justice thereof, a circuit judge, or a district

court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." (emphasis added). The Eighth Circuit has held that the "in custody" requirement necessitates that petitioner must be in custody pursuant to the conviction he is challenging. Flittie v. Solem, 882 F.2d 325, 326 (8th Cir. 1989) ("[petitioner] must have been **in custody** ... with regard to the conviction or sentence under attack in order for subject matter jurisdiction to attach.").

This Court is without jurisdiction to review petitioner's claims as they relate to his conviction and sentence for driving while revoked. Consequently, petitioner's claims relating to that conviction and sentence will be denied, with prejudice, for lack of subject matter jurisdiction.

## SUMMARY OF FACTS

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> On the afternoon of September 25, 1998, Deputy Greg Weddle ("Dep. Weddle") of the Laclede County Sheriff's Department was directing traffic at the intersection of Highway 5 and Route C in Laclede County. At approximately 3:15 p.m., as Dep. Weddle was directing traffic, he observed a black car that he identified as a Pontiac Firebird traveling north on Highway 5 approaching at a high rate of speed. Dep. Weddle observed the car swerve out of its lane several times before passing by his location, narrowly missing Dep. Weddle and his patrol vehicle. While Dep. Weddle did not get a good look at the driver, he observed that the driver had long, shoulder-length hair and was wearing a black t-shirt. He also noticed that the front windshield of the car was "cracked pretty good, shattered like, still intact[,] but shattered." Although Dep. Weddle did not personally pursue the black car, he did radio dispatch and request assistance from the highway patrol in apprehending the driver of the black vehicle.

> On that same day, shortly after the incident with Dep. Weddle, David Hudson, a resident of Laclede County, was traveling south on Highway 5. As he approached an area roughly 1.5 miles north of the intersection of Highway 5 and Route C[,] he observed a late model black car that he described as either a "Trans Am, Z 28 [or] Firebird" traveling in a northerly direction, run another car off the road. Mr. Hudson was forced to drive his vehicle off the road into a driveway to avoid the black car as it approached him. The car came within roughly three feet of Mr. Hudson's vehicle as it passed him, causing Mr. Hudson to bring his vehicle to a stop. Mr. Hudson observed that the driver had long hair, and was not wearing a shirt. He also noticed that the black car "had a busted out windshield on the driver's side.

-2-

Wasn't plum gone but it was shattered." After passing Mr. Hudson, the black car pulled into a nearby driveway.

When the black car stopped, Mr. Hudson pulled out an unloaded rifle with a scope and looked through the scope so that he could get a better look at the vehicle. The driver was the only person Mr. Hudson could see in the vehicle. While looking through the scope, Mr. Hudson watched the individual walk north for approximately thirty seconds until the person "went into the brush, trees." Mr. Hudson was able to get a look at the driver and later identified the man as Defendant. After watching Defendant walk into the woods, Mr. Hudson continued down the road until he reached the intersection where Dep. Weddle was located. Mr. Hudson relayed the events he had observed to Dep. Weddle and then proceeded to his farm.

Several minutes later, while driving north on Highway 5, Mr. Hudson observed Defendant standing at the corner of Highway 5 and Route HH, approximately two miles north of Highway 5 and Route C. He decided to inform Dep. Weddle that he had seen Defendant so he turned around and proceeded back to Highway 5 and Route C. Dep. Weddle informed Mr. Hudson that a highway patrolman had detained Defendant.

Trooper Jason Riggs ("Trooper Riggs") of the Missouri Highway Patrol, was working on the afternoon of September 25, 1998, when he overheard radio traffic concerning the incident with Dep. Weddle. He also received a communication "that the vehicle that nearly struck [Dep. Weddle] had pulled into a private drive[,] then the driver of the vehicle exited and started walking north on Highway 5." Trooper Riggs heard the driver described as a male subject with long hair, no shirt, wearing black sweat pants. At approximately 3:40 p.m., Trooper Riggs observed Defendant standing at the corner of Highway 5 and Route HH. Trooper Riggs stopped his vehicle and asked Defendant to come over next to him as Defendant was "standing fairly close to Highway 5." Trooper Riggs observed that Defendant was unsteady on his feet, his eyes were blood shot and watery, and his speech was slurred as he talked. The trooper observed that Defendant had a set of car keys in his hands, which he gave to Trooper Riggs upon request.[FN 3] After asking Defendant to submit to some field sobriety tests, Trooper Riggs administered the horizontal gaze nystagmus test and determined that Defendant had failed the test. Defendant refused to perform any other field sobriety tests, and when asked if he'd been drinking, Defendant replied, "a lot." At that point, Trooper Riggs placed Defendant under arrest for driving while intoxicated and read him his Miranda Rights.

> [Footnote 3]Later Trooper Riggs went to Steve's Tire World, where the black car in question, a Pontiac Firebird, had been towed. The trooper noticed that the Firebird had a cracked windshield and that the keys Defendant had given him the day before started the Firebird.

-3-

> Trooper Riggs received an additional communication that informed him a witness was with Dep. Weddle, so he proceeded to the intersection of Highway 5 and Route C. Upon arriving at this location, Mr. Hudson identified Defendant as the driver he had observed in the black car. Defendant was subsequently transported to the Laclede County Jail and charged with felony driving while intoxicated and driving while revoked.
>
> At trial, Dep. Weddle, Mr. Hudson, and Trooper Riggs testified to the events as set out above. The jury returned a guilty verdict on both counts.

(Respondent's Exhibit "E," pp. 2-6) (footnote omitted).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1]  Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

### GROUND 1 - INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO REQUEST A CHANGE IN VENUE

In Ground 1, petitioner alleges that his trial counsel was ineffective for failing to move for a change of venue because petitioner's niece, who knew his criminal history, became a member of the jury. Respondent contends that this ground for relief is without merit because petitioner failed to show that his trial counsel's failure to move for a change of venue prejudiced his defense.

In order to succeed on petitioner's claim of ineffective assistance of trial counsel, petitioner must establish that: (1) his counsel's performance was unreasonable as viewed in the totality of the circumstances;

---

[1]"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-4-

and (2) his defense was prejudiced by counsel's actions in that there is a reasonable probability that, but for counsel's unprofessional acts, the results of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 694-95 (1984); Schaeffer v. Black, 774 F.2d 865, 867 (8th Cir. 1985). Reasonably effective assistance of counsel may be defined as the skill and diligence that a reasonably competent attorney would exercise under similar circumstances. See, e.g., Strickland v. Washington, 466 U.S. at 687-90. Judicial scrutiny of counsel's performance must be highly deferential, id. at 689, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

On appeal from the denial of his motion for post-conviction relief, the Missouri Court of Appeals held as follows:

> Movant maintains his trial counsel was ineffective by not requesting a change of venue, even though Movant requested that he do so. He contends that he was prejudiced by this failure because his niece, by marriage, became a juror and that she knew of his prior alcohol related convictions. He also explained, at the evidentiary hearing, that he wanted his counsel to request a change of venue because Movant was "well[-]known around [the county] because of the alcohol," but that his trial counsel refused unless Movant paid more money.
>
> During voir dire, the State asked prospective jurors if anyone knew Movant. None of the jurors, including a juror later identified by Movant as his niece by marriage, responded affirmatively to the State's question. The same was true when they were asked if anyone knew anything about this case. However, on the second day of trial, Movant advised his trial counsel that he recognized one of the jurors as being his niece by marriage. Counsel then informed the trial court that one of the jurors might be related to Movant. Mandy Gormley ("Mrs.Gormley") was summoned to the bench, out of the presence of the other jurors, to discuss the possibility that she may be related to Movant. The following colloquy occurred between the court and Mrs. Gormley:
>
>> Q: Do you know or know of Mr. Lawrence?
>>
>> A: No.
>>
>> Q: You don't know that you have ever seen or known of him?
>>
>> A: No. I will say that after you read that address today, that he is in Richland, now my husband's mom at one time, I

Case 6:05-cv-03396-GAF   Document 21   Filed 03/24/06   Page 5 of 18

> don't know her, we never talked to her, that her, I don't know her maiden name. One time her last name was Lawrence and kind of hit me then that there may have been, but I have know [sic] clue as to if there's any relationship there. But it just kind of hit me, but I don't know any of his family from his mom's side or his mom. Other than that, no.
>
> Q: Talking about your husband?
>
> A: Yes.
>
> Q: What's his name?
>
> A: Johnny Gormley.
>
> Q: So you don't know any of his relatives or any of his mom's?
>
> A: Not on the mom's side, no.
>
> Q: And you said that you recalled that her name was once Lawrence?
>
> A: At one time, he didn't know that much about his mom either and he thought at one time that could have been her last name. He didn't grow up around her at all.

Movant's claim of prejudice is refuted by the record. Not only did Mrs. Gormley not recognize him, but she was unfamiliar with her husband's mother's side of the family. Movant fails to demonstrate how he was prejudiced by this juror.

Movant's counsel testified at the evidentiary hearing that he discussed the possibility of a change of venue with Movant. They evaluated whether Movant would be able to obtain a fair trial in Laclede County or if too many people knew him. Movant was also advised of the inconvenience of having the trial in another county. His counsel stated that he did not believe that a change of venue was necessary because the circumstances of the case were not publicly known and he believed that Movant would obtain a fair trial. According to his counsel, Movant deferred to his opinion about a change of venue.

The motion court concluded that Movant failed to establish prejudice regarding the venue issue. It has not been shown to be clearly erroneous in that regard. Point I is denied.

(Respondent's Exhibit "J," pp. 6-8).

The resolution of Ground 1 by the state courts did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Terry Williams v. John Taylor</u>, 529 U.S. 362, 412-13 (2000).[2] Applying the <u>Strickland</u> standard of review to the facts as set forth in the record, the Court finds that trial counsel was not ineffective.

Ground 1 is denied.

## GROUND 2 - INEFFECTIVE ASSISTANCE OF COUNSEL FOR NOT ALLOWING PETITIONER TO TESTIFY

In Ground 2, petitioner alleges that his trial counsel was ineffective because counsel threatened to withdraw from the case if petitioner testified on his own behalf, despite petitioner's request to exercise his right to testify. Petitioner alleges that he would have testified that he did not have keys in his hands when he was confronted by Trooper Riggs, which would have resulted in an acquittal. Petitioner also claims that his trial counsel was wrong for discouraging his testimony because counsel's fear that petitioner's prior convictions would come into evidence was incorrect because they were put into evidence anyway. Respondent contends that this ground for relief is without merit.

On appeal from the denial of petitioner's Rule 29.15 motion, the Missouri Court of Appeals rejected this ground as follows:

> In Movant's second point, he contends his trial counsel was ineffective for

---

[2]According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 412-13.

> refusing to let Movant testify, as he would have stated that the car keys
> were not in his hand and this would have gone to the element of whether
> Movant was driving the car. Absent any exceptional circumstances, the
> advice by counsel on whether or not to testify is a matter of trial strategy
> and not grounds for post-conviction relief. ***Lott v. State***, 147 S.W.3d 842,
> 845 (Mo. App. S.D. 2004); ***Morrison v. State***, 75 S.W.3d 893, 897 (Mo.
> App. S.D. 2002).
>
> During the evidentiary hearing, Movant explained that he wanted to testify,
> but his trial counsel threatened to withdraw if Movant insisted on doing so.
> His trial counsel, however, testified that he did not want Movant's eleven
> prior DWI convictions to become known to the jury because he believed
> such knowledge would be damaging to his defense. "[Movant]'s spent a
> good portion of his life in jail or prison, and I was very concerned that the
> jury would prejudge him or judge him for that case based upon his priors,
> which is a fairly typical concern for anyone who has prior convictions, but
> [Movant] had quite a few." Movant's trial counsel also testified that he
> discussed with Movant, on several occasions, his right to testify and why
> counsel believed he should not take the stand. According to counsel,
> Movant agreed with that advice. Later during the trial, counsel confirmed
> with Movant that he did not intend to testify.
>
> Movant also failed to prove that had he testified, a different outcome would
> have resulted. If Movant had testified, the jury could have learned of his
> prior eleven DWI convictions. Even if Movant had testified that he was not
> holding the car keys, there was an overwhelming amount of evidence
> implicating Movant. Hudson identified Movant as the driver of the black
> vehicle that nearly ran him and another driver off of the highway after
> crossing the center line. The vehicle and driver matched the description
> given by Deputy Weddle, which Trooper Riggs used to identify and
> apprehend Movant. Movant, therefore, has not demonstrated prejudice
> from counsel's alleged ineffectiveness.
>
> The motion court found "that given [M]ovant's record of convictions, it was
> reasonable trial strategy not having [M]ovant testify at trial. Movant has
> failed to meet the burden of proof as to this point." We cannot conclude
> that these findings were clearly erroneous. Point II is denied.

(Respondent's Exhibit "J," pp. 8-9).

The resolution of petitioner's second ground for relief by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" 28 U.S.C. §

2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Terry Williams v. John Taylor, supra. Applying the Strickland standard of review to the facts as set forth in the record, the Court finds that trial counsel was not ineffective.

Ground 2 is denied.

## GROUND 3 - TRIAL COURT ERROR FOR DENYING CHALLENGES FOR CAUSE

In Ground 3, petitioner alleges that the trial court erred in denying his motion to strike two jurors after the jurors showed that they could not be impartial during voir dire. Petitioner alleges that because his motion was denied, he was forced to use his peremptory challenges to strike these two jurors, denying his right to a "qualified jury." Respondent contends that this ground for relief is procedurally defaulted. However, the Court finds this ground for relief is without merit.

Pursuant to Mo. Rev. Stat. § 494.480(4), a trial court's failure to remove a prospective juror for cause cannot be the basis for reversing a conviction unless the juror actually served on the jury and participated in the verdict rendered against petitioner. This was the basis for the Missouri Court of Appeal's denial of this claim:

> In his first point, Defendant alleges that the trial court erred in denying Defendant's challenge for cause as to two venire persons, Nancy Twenter ("Twenter") and Katherine Lyon ("Lyon"), because "two potential jurors equivocated on voir dire as to whether they would be fair and impartial...." As such, Defendant was forced to use his peremptory challenges on the two venire persons and was not afforded "a full panel of qualified jurors."
>
> In support of his contention, Defendant cites to **State v. Wilson**, 998 S.W.2d 202 (Mo. App. 1999), which stands for the proposition that "[a]n individual accused of a crime is entitled to full panel of qualified jurors before he is required to expend his peremptory challenges. For a trial court to deny a legitimate challenge for cause constitutes an abuse of discretion and reversible error." ***Id.*** At 205 (quoting **State v. Walker**, 795 S.W.2d 522, 525 (Mo. App. 1990) (citations omitted). However, a closer reading of **Wilson** reveals that the challenged jurors actually served as members of the jury in the trial. The two jurors challenged in the present case, Twenter and Lyon, were struck from the panel via use of peremptory strikes by Defendant. <u>Because Defendant used his peremptory strikes to remove Twenter and Lyon, he is precluded by the provisions of [S]ection</u>

> 494.480.4, RSMo 1997, from arguing that the failure of the trial court to strike them for cause was reversible error. **State v. Deck**, 994 S.W.2d 527, 538 (Mo. Banc. 1999); **State v. Brown**, 998 S.W.2d 531, 540 (Mo. Banc. 1999); **State v. Bishop**, 942 S.W.2d 945, 947 (Mo. App. 1997). Point denied.

(Respondent's Exhibit "E," pp. 6-7) (emphasis added).

The resolution of petitioner's third ground for relief by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Terry Williams v. John Taylor, supra. See Ross v. Oklahoma, 487 U.S. 81, 88 (1988) ("[W]e reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury. We have long recognized that peremptory challenges are not of constitutional dimension.").

Ground 3 is denied.

## GROUND 4 - TRIAL COURT ERROR FOR DENYING MOTION FOR A NEW TRIAL

In Ground 4, petitioner alleges that after the jury was selected, he learned that he was related to one of the jurors, Mandy Gormley. When Ms. Gormley was initially questioned about her relation to petitioner, she denied knowing of any. However, petitioner alleges that when he filed a motion for a new trial, Ms. Gormley admitted to the trial court that she was related to petitioner. Petitioner also presented evidence at the new trial hearing that Ms. Gormley had knowledge of petitioner's prior criminal history. Petitioner claims that the trial court erred when it denied his motion for a new trial based on his relation to Ms. Gormley. Respondent contends that this ground for relief is without merit because the trial court's factual finding that Ms. Gormley was not aware of her relation to petitioner is entitled to deference.

On direct appeal, the Missouri Court of Appeals held as follows:

> In his second point, Defendant maintains the trial court erred in denying his

-10-

request for a mistrial and a new trial because one of the jurors, Mandy Gormley, failed to disclose that she was related to Defendant and had knowledge of his prior criminal history, thus depriving Defendant of a fair trial by an impartial jury panel.

During voir dire, the State asked the prospective jurors if "anyone know[s] the Defendant, Richard Lawrence?" No one responded affirmatively to this question, including Mrs. Gormley. Defendant's trial counsel did not address this subject during voir dire. Mrs. Gormley was seated as a member of the jury.

On the second day of trial, just after the close of the State's evidence, Defendant asserts that he advised his trial counsel that he became aware that Mrs. Gormley was his niece, through marriage. [FN 6] Defendant's trial counsel, in turn, informed the trial court of this revelation. Defense counsel explained to the trial court that Defendant had informed him during voir dire that the name Gormley sounded familiar to him and that he might have "a relative by that name." Defense counsel also reported to the trial court that, "[w]e went ahead and listened to some of the questioning by the state. They asked if anyone knew [Defendant]. She [juror Gormley] did not indicate that she did and quite frankly, Your Honor, at that point it didn't come up again and we just dismissed it."

> [Footnote 6] Defendant's sister, Shirl Strutton, has a son, Johnny Gormley, to whom Mrs. Gormley is married.

Out of the presence of the other jurors the trial court called Mrs. Gormley to inquire about Defendant's claim that she was related to Defendant. The following exchange occurred:

> The Court: Do you know or know of Mr. Lawrence.
>
> Juror Gormley: No.
>
> The Court: You don't know that you have ever seen or known of him.
>
> Juror Gormley: No. I will say that after you read that address today, that he is in Richland, now my husband's mom at one time, I don't know her, we never talked to her, that her, I don't know her maiden name. One time her last name was Lawrence and kind of hit me then that there may have been, but I have know [sic] clue as to if there's any relationship there. But it just kind of hit me, but I don't know any of his family from his mom's side or his mom. Other than that, no.
>
> The Court: Talking about your husband?

-11-

> Juror Gormley: Yes.
>
> The Court: What's his name?
>
> Juror Gormley: Johnny Gormley.
>
> The Court: So you don't know any of his relatives or any of his mom's?
>
> Juror Gormley: Not on the mom's side, no.
>
> The Court: And you said that you recalled that her name was once Lawrence?
>
> Juror Gormley: At one time, he didn't know that much about his mom either and he thought at one time that could have been her last name. He didn't grow up around her at all.

Defendant then moved that Juror Gormley be removed from the [impaneled] jury and/or that a mistrial be granted. The trial court denied Defendant's motion, noting that Defendant did not pursue the existence of a relationship between Juror Gormley and Defendant during voir dire.

Following his conviction, Defendant filed several post-trial motions including a motion for new trial. During the hearing on Defendant's motion for new trial, he presented evidence showing that Juror Gormley knew of her relationship to Defendant.

Defendant's brother-in-law, Tom Strutton, testified at the motion for new trial that prior to Defendant's trial, Juror Gormley had occasion to have been shown family pictures of Defendant and had heard stories about Defendant's drug abuse and criminal history. Additionally, Defendant presented to the hearing court an affidavit signed by Shirl Strutton, discussed more fully *infra*, which related the same information.

Juror Gormley testified at the hearing on the motion for new trial. She related that she knew Shirl Strutton was her mother-in-law. However, to the question whether or not she was related to defendant, she answered, "Now I am." She also testified that while she had been to the home of Defendant's sister, she did not specifically remember viewing any photographs of Defendant or hearing stories of his past. Lastly, she denied ever having discussed Defendant with her husband.

The trial court denied Defendant's motion for new trial, noting that Juror Gormley had consistently stated that she did not know Defendant both during the Court's questioning during the trial and in the hearing on the motion for new trial. Further, the trial court observed that Defendant had

-12-

failed to pursue the issue during voir dire.

> "The decision to overrule a motion for mistrial or a motion for new trial will not be overturned absent a finding that the trial court abused its discretion." ***State v. Hicks***, 959 S.W.2d 119, 122 (Mo. App.1997). While Defendant acknowledges that he informed his trial counsel during voir dire of the possibility that he was related to Juror Gormley, Defendant maintains that the matter was not pursued further in voir dire because "[Juror] Gormley did not acknowledge that she knew the Defendant--though she was directly asked whether she did."
>
> However, "[t]he ability to disclose requires awareness of the information solicited during voir dire." ***Farm Credit Services of Western MO, P.C.A. v. Slaughter***, 850 S.W.2d 433, 435-36 (Mo. App.1993). "To obtain a new trial on the grounds of juror nondisclosure, the moving party must show more than the existence of disqualifying information; that party must show that, when questioned, the juror knew about the information solicited, and that the juror concealed or failed to reveal his [or her] knowledge." ***Id.***; *see also* ***Kennedy v. Tallent***, 492 S.W.2d 33, 36 (Mo. App.1973); ***State v. Chandler***, 314 S.W.2d 897, 900 (Mo.1958). Clearly, Defendant failed to convince the trial court that Juror Gormley intentionally concealed or failed to reveal knowledge of Defendant during voir dire. "We defer to the trial court's evaluation of the credibility of [a] witness...." ***State v. Lord***, 43 S.W.3d 888, 891(Mo. App.2001). We find no abuse of discretion in the trial court's ruling. Point denied.

(Respondent's Exhibit "E," pp. 8-12).

The resolution of petitioner's fourth ground for relief by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Terry Williams v. John Taylor</u>, <u>supra</u>.

Ground 4 is denied.

### GROUND 5 - TRIAL COURT ERROR FOR NOT PERMITTING TESTIMONY OF WITNESS

In Ground 5, petitioner alleges that during the hearing on his motion for a new trial, his trial counsel attempted to call petitioner's sister, Shirl Strutton, as a witness. Petitioner alleges that the trial court erred

-13-

when it found that Ms. Strutton's testimony would violate the "rule on witnesses." Respondent contends that this ground for relief is without merit because petitioner cannot demonstrate prejudice as a result of the claimed error.

On direct appeal, the Missouri Court of Appeals held as follows:

> In his third point, Defendant asseverates that the trial court erred by its refusal to allow Mrs. Shirl Strutton, Defendant's sister, to testify at the hearing for a new trial. Early in the hearing, Defendant's trial counsel invoked the "rule on witnesses" and proceeded with opening statements while Mrs. Strutton was present in the courtroom. When Defendant's trial counsel called Mrs. Strutton as its first witness[,] the trial court noted that she had been present in the courtroom and, accordingly, sustained the State's objection to her testimony.
>
> Defendant submitted an offer of proof in the form of an affidavit previously signed by Mrs. Strutton, which replicated her proposed testimony and mirrored the testimony of her husband, Mr. Tom Strutton. While the trial court refused to permit Mrs. Strutton to testify, it did allow Defendant to submit her affidavit into evidence.
>
> A trial court has the authority to direct the exclusion of witnesses so that they will not be privy to testimony provided by other witnesses. ***State v. Griffen***, 978 S.W.2d 445, 447 (Mo. App. 1998); ***State v. Tracy***, 918 S.W.2d 847, 850 (Mo. App. 1996). In the present case, the trial court did so at the specific request of Defendant. "The remedy or sanction available to a court for violation of the 'the rule' is to disqualify the offending witness from testifying." ***Griffen***, 978 S.W.2d at 447.
>
>> However, violation of 'the rule' does not automatically warrant the exclusion of the witness who violates the rule. To the contrary, it is only when certain 'special circumstances' exist that a trial court should exclude the testimony of a witness who violates the witness exclusion rule. As a general rule, these 'special circumstances' exist only where there is proof that he witness violated the rule with 'the consent, connivance or procurement of the party or counsel calling him.'
>
> *Id.* (citations omitted).
>
> Defendant argues that the "rule on witnesses" should not have applied to Mrs. Strutton because she was the first witness and trial counsel "certainly was not aware that the [trial] [c]ourt would consider his keeping the first witness in the courtroom to be a violation of the rule." Defendant acknowledges that Mrs. Strutton was present with the consent of counsel,

-14-

> but posits that this consent was based on trial counsel's negligent view of the trial court's understanding of the rule on witnesses and was not a "connivance" or attempt to change Mrs. Strutton's testimony.
>
> In support of his argument, Defendant cites to *State v. Shay*, 339 S.W.2d 799 (Mo. 1960), a case in which the trial court excluded the testimony of two or three defense witnesses who were present in the courtroom and heard other testimony after the "rule on witnesses" had been invoked. *Id.* at 800.
>
> In *Shay*, the Supreme Court determined that the trial court had abused its discretion in excluding the two witnesses. The high court observed that when a witness is in violation of the "rule on witnesses" without the "consent, connivance or procurement of the party or counsel calling him" he or she is not rendered incompetent to testify. *Id.* at 801.
>
> The record does not support a finding that Defendant's trial counsel had "connived" or otherwise deliberately attempted to have Mrs. Strutton remain in the court room for purposes of altering her testimony. The trial court abused its discretion in holding otherwise. *See State v. Neria*, 526 S.W.2d 396, 399 (Mo. app. 1975); *Shay*, 339 S.W.2d at 802. However, we find that the trial court's abuse of discretion to be harmless beyond a reasonable doubt, as we conclude that Mrs. Strutton's testimony would have merely been cumulative to the testimony provided by her husband, Mr. Tom Strutton, as previously set out in Point II. *Neria*, 526 S.W.2d at 399. Additionally, the hearing court was privy to the particular facts of her proposed testimony, as it accepted Mrs. Strutton's affidavit into evidence which essentially replicated her proposed testimony. Point denied.

(Respondent's Exhibit "E," pp. 12-14).

The resolution of petitioner's fifth ground for relief by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Terry Williams v. John Taylor</u>, <u>supra</u>.

Ground 5 is denied.

### GROUND 6 - TRIAL COURT ERROR IN ALLOWING WITNESS IDENTIFICATION OF PETITIONER

In Ground 6, petitioner alleges that the trial court erred when it admitted into evidence witness, David Hudson's, in-court and out-of-court identifications of petitioner. Petitioner also alleges that this witness could

not identify him during the preliminary hearing, the pretrial hearing, or at trial, and that this witness' out-of-court identification was unduly suggestive. Respondent contends that this ground for relief is without merit because the trial court's factual determination that the identifications were reliable is entitled to deference.

On direct appeal, the Missouri Court of Appeals held as follows:

> In his fourth point, Defendant contends the trial court erred in permitting the "out-of-court" and "in-court" identification of Defendant by Mr. Hudson, over Defendant's objection and motion to suppress identification. Defendant maintains that Mr. Hudson was unable to identify Defendant at the preliminary hearing, the pre-trial hearing and at trial, and argues that Mr. Hudson's identification by a "one-on-one confrontation show-up and by a single photo were unduly suggestive and unreliable."
>
> In determining whether this Court should exclude identification testimony, we must review the evidence and determine if the procedures utilized in the course of the identifications were impermissibly suggestive. *State v. Blanchard*, 920 S.W.2d 147, 149 (Mo. App.1996). "The crucial test for the admission of identification testimony is two-pronged: (1) was the pre-trial identification procedure impermissibly suggestive, and (2) if so, what impact did the suggestive procedure have upon the reliability of the identification." *State v. Moore*, 925 S.W.2d 466, 467 (Mo. App.1996); *State v. Secrease*, 859 S.W.2d 278, 279 (Mo. App.1993). Witness identification should be excluded only when the procedure was so suggestive that there exists a great likelihood of irrevocable misidentification. *Moore*, 925 S.W.2d at 467.
>
> From our review of the record, we find little to support Defendant's contention that Trooper Riggs or Dep. Weddle employed overly suggestive means in presenting Defendant to Mr. Hudson for identification purposes. At most, Trooper Riggs merely asked Mr. Hudson if the individual seated in his patrol car--the Defendant--was the man he had seen driving the black car. "Pre-trial showups are valid under Missouri law even where the subject is in handcuffs and the officers say defendant is a suspect." *Id.*; *Secrease*, 859 S.W.2d at 279; *State v. Clark*, 809 S.W.2d 139, 142 (Mo. App.1991).
>
> Assuming, arguendo, that the procedure was unduly suggestive, Mr. Hudson's identification of Defendant was reliable in any event.
>
>> Reliability is assessed under a totality of the circumstances considering the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; the level of certainty of identification demonstrated by the witness; and (5) the length of time between the crime and the

-16-

subsequent identification.

***Secrease***, 859 S.W.2d at 279.

Here, Mr. Hudson testified that he had observed Defendant through a scope on his rifle for approximately thirty seconds, shortly after the incident in question. Mr. Hudson also related that he had experience in viewing items through the scope because he used the scope to view cattle tags at a distance for his farming operation. Furthermore, Mr. Hudson testified that he observed Defendant on a second occasion some twenty minutes after the first encounter, when Mr. Hudson observed Defendant standing on the roadside off of Highway 5. Mr. Hudson provided an accurate description of the man he had seen to Deputy Weddle and this description was, in turn, relayed to Trooper Riggs, who was easily able to employ Mr. Hudson's description in locating Defendant.

After locating Defendant, Trooper Riggs transported Defendant to the presence of Mr. Hudson, who readily identified Defendant as the man he had seen both through the scope and standing on the roadside. Mr. Hudson's pre-trial identification was reliable.

With regard to the in-court photo identification, Defendant alleges that Mr. Hudson's identification through use of the photo in court was improper because only one photo was shown, and Defendant's name was clearly labeled at the bottom of the picture.

Our review of the record, however, reveals a single photograph was introduced so that Mr. Hudson could identify Defendant through a photograph taken at the time of his arrest because Defendant had changed his physical features from the time of his arrest to the date of trial, roughly ten months, to the point that Mr. Hudson could not positively identify Defendant in court as the man he had seen on September 25, 1998. Under these circumstances, we find no prejudice in the in-court identification of Defendant by Mr. Hudson.

Even assuming an infirmity in Mr. Hudson's identification of Defendant, any error in its admission at trial was harmless beyond a reasonable doubt because other cumulative evidence at trial sufficiently established that Defendant was driving the car. *See* ***State v. Clark***, 26 S.W.3d 448, 458 (Mo. App.2000). Both Dep. Weddle and Mr. Hudson testified that they were nearly hit by a black car with a broken windshield. Both described the driver as having long, dark hair. Minutes later Trooper Riggs saw Defendant standing at the same intersection where Mr. Hudson had previously observed him. Partly based on Mr. Hudson's description Trooper Riggs was able to apprehend Defendant. Defendant had a set of keys in his hand. One of the keys started the same black vehicle that both Mr. Hudson and Dep. Weddle had previously seen. Clearly there was sufficient evidence for the jury to find that Defendant was the driver of the

-17-

car. Point denied.

(Respondent's Exhibit "E," pp. 15-18).

The resolution of petitioner's sixth ground for relief by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Terry Williams v. John Taylor, supra.

Ground 6 is denied.

## **ORDER**

Accordingly, it is **ORDERED** that:

(1) petitioner's claims relating to his conviction and one-year sentence for driving while revoked are denied, with prejudice, for lack of subject matter jurisdiction;

(2) the above-captioned petition for writ of habeas corpus as it relates to petitioner's conviction and ten-year sentence for driving while intoxicated is denied; and

(3) this case is dismissed with prejudice.

    /s/Gary A. Fenner
GARY A. FENNER
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri

Dated: March 24, 2006